UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC, | | No. C 10-4171 SBA (LB) |
| Plaintiff, | | **REPORT AND RECOMMENDATION** |
| v. | | [Re: ECF No. 38] |
| ULISES CONSTANTINO NAPURI, individually and d/b/a INCAS GRILL, | | |
| Defendant. | | |

## INTRODUCTION

The district court entered partial summary judgment in favor of Plaintiff J&J Sports Productions, Inc. ("J&J"). J&J now moves for an award of damages in the amount of $112,200 against Defendant Ulises Constantino Napuri, individually and doing business as Incas Grill. J&J seeks damages stemming from Mr. Napuri's violation of 47 U.S.C. § 605 and for conversion of J&J's property. Judge Armstrong, the presiding judge in this action, referred J&J's motion to the undersigned for a report and recommendation. Having considered the moving papers, the undersigned **RECOMMENDS** that J&J's motion be granted for the reasons discussed below.[1]

---

[1] The court held a hearing on J&J's motion on March 7, 2013, but Mr. Napuri did not appear at it. *See* 3/7/2013 Minute Order, ECF No. 44.

**STATEMENT**

J&J holds the exclusive national distribution rights for "'Number One': The Floyd Mayweather, Jr. v. Juan Manuel Marquez Championship Fight Program" (the "Program"), which was telecast nationwide on Saturday, September 19, 2009. Mr. Napuri intercepted and exhibited the program at his business in Contra Costa County on September 19, 2009, without payment to or authorization from J&J.

J&J filed the instant action against Mr. Napuri, individually and doing business as Incas Grill, on September 16, 2010. Complaint, ECF No. 1. The Complaint alleges four claims: (1) violation of the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605 ("§ 605"); (2) violation of the Cable & Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. § 553 ("§ 553"); (3) conversion; and (4) violation of California Business & Professions Code § 17200. See id.

On October 18, 2011, J&J filed a Motion for Partial Summary Judgment to establish Mr. Napuri's liability on all claims except the fourth claim under § 17200. Motion for Partial Summary Judgment, ECF No. 23. (J&J later withdrew its § 17200 claim. *See* 1/17/2013 Order, ECF No. 41.) On September 28, 2012, Judge Armstrong granted J&J's motion. 9/28/2012 Order, ECF No. 33.

With respect to J&J's claims under § 553 and § 605, Judge Armstrong found that J&J had submitted evidence, which was undisputed, establishing J&J's propriety rights in the Program at issue. 9/28/2012 Order, ECF No. 33 at 3 (citing Gagliardi Decl. ¶ 3, ECF No. 25). She also found that, through unanswered Requests for Admission served on Mr. Napuri, J&J had established that on September 19, 2009, Mr. Napuri intercepted and broadcast the Program at Incas Grill, without payment to or authorization from J&J. *Id.* (citing Riley Decl. Ex. A, ECF No. 23-1). Thus, Judge Armstrong found that the record presented is sufficient to establish that no genuine issue of material fact exists as to Mr. Napuri's liability for having violated § 605 and § 553 and granted summary judgment as to the issue of liability on these claims. *Id.* at 3-4.

With respect to J&J's claim for conversion, Judge Armstrong found that J&J had presented evidence showing that it owns the exclusive commercial distribution rights to the Program. *Id.* at 4 (citing Gagliardi Decl. ¶ 3, ECF No. 25). She also found that Mr. Napuri wrongfully disposed of

J&J's property by intercepting and broadcasting the Program without payment or permission to do so, thereby causing J&J to suffer damages in the form of lost licensing fees. *Id*. (citing Riley Decl. Ex. A, ECF No. 23-1). Accordingly, Judge Armstrong granted summary judgment on the issue of liability as to J&J's claim for conversion. *Id*.

On January 16, 2013, with Mr. Napuri's liability determined, J&J filed a motion for damages under § 605 and for conversation. Motion for Damages, ECF No. 38.[2] It seeks statutory damages of $10,000 and enhanced damages of $100,000 for Mr. Napuri's § 605 violation and $2,200 in damages for Mr. Napuri's conversation. *Id*. at 7, 15. Mr. Napuri did not file an opposition to J&J's motion. *See generally* Docket. And Mr. Napuri failed to appear at the March 7, 2013 hearing on J&J's motion. *See* 3/7/2013 Minute Order, ECF No. 44.

## ANALYSIS

### I. DAMAGES FOR VIOLATION OF § 605

As noted above, J&J requests the maximum statutory damages available under Section 605. Section 605(e)(3)(C)(i)(II) provides that an aggrieved party may recover a sum of not less than $1,000 and not more than $10,000 for each violation of § 605(a), as the court considers just. "A traditional method of determining statutory damages is to estimate either the loss incurred by the plaintiff or the profits made by the defendants." *Joe Hand Promotions v. Kim Thuy Ho*, No. C09–01435 RMW, 2009 WL 3047231, at *1, (N.D. Cal. Sept.18, 2009) (citations omitted). Here, J&J submits evidence that a commercial license for the broadcast of the Program would have cost Mr. Napuri $2,200, based on Incas Grill's capacity to hold approximately 60 persons. Gagliardi Decl. ¶ 8 & Ex. 2. Alternatively, as to potential profits to Mr. Napuri, J&J submits evidence that three separate head counts, at various times, revealed that the total number of patrons was 8, 8, and 10, and that there was no cover charge. Affiant Decl., ECF No. 23-2 at 3. J&J also argues that, although its investigator took these head counts during the undercard bout, and that there were only 10 patrons in Incas Grill when its investigator left, it is "reasonable to assume that the patronage

---

[2] J&J explicitly stated that it does not seek damages under § 553. Motion for Damages, ECF No. 38 at 6 n.2.

1  increased leading up to the 'main event' between Mayweather and Marquez." Motion for Damages,
2  ECF No. 38 at 10. This is a conclusory and unsupported statement, and the court gives it no weight.
3  Thus, as there is no evidence of how much Incas Grill made during the unlawful exhibition of the
4  Program, the court shall base statutory damages on the cost of the commercial license. Accordingly,
5  the undersigned recommends that the district court award J&J $2,200 in statutory damages.

6  J&J also seeks enhanced damages of $100,000. Enhanced damages of up to $100,000.00 are
7  available when the violation was committed willfully and for the purpose of commercial advantage
8  or private financial gain. 47 U.S.C. § 605(e)(3)(C)(ii). Mr. Napuri's failure to respond to J&J's
9  Requests for Admission means that he admits that he advertised the Program, charged a cover
10 charge, and has shown similar programs in the past three years, *see Conlon v. United States*, 474
11 F.3d 616, 621 (9th Cir. 2007) (citing Fed. R. Civ. P. 36(a), (b)), even though J&J's investigator
12 apparently did not have to pay a cover charge, *see* Affiant Decl., ECF No. 23-2 at 2.

13 The opinions cited by J&J, however, generally awarded enhanced damages in amounts far below
14 the maximum amount that it requests here. *See* Motion for Damages, ECF No. 38 at 11-15. And
15 courts in this district have found an enhancement award of $5,000 proper where there was a modest
16 number of patrons and a cover charge was imposed. *See Garden City Boxing Club, Inc. v. Lan Thu*
17 *Tran*, C–05–05017, 2006 WL 2691431, at *2 (N.D. Cal. Sept. 20, 2006) (Whyte, J.) (awarding
18 $1,000 in statutory damages and $5,000 in enhancement damages when 40 persons were present at
19 the establishment and patrons were charged a ten dollar cover charge); *Entertainment by J & J, Inc.*
20 *v.. Montecinos*, C–01–4242, 2002 WL 1735384, at *1 (N.D. Cal. July 25, 2002) (Chesney, J.)
21 (awarding $1,000 in statutory damages and $5,000 in enhancement damages when 35 persons were
22 present at the establishment and patrons were charged a ten dollar cover charge); *Kingvision*
23 *Pay–Per–View, Ltd. v. Chavez*, C–00–2270, 2000 WL 1847644, at *3 (N.D. Cal. Dec. 11, 2000)
24 (Breyer, J.) (awarding $1,000 in statutory damages and a $5,000 enhancement where there was a ten
25 dollar cover charge and forty patrons present for the telecast). Here, while it is deemed admitted that
26 a cover was charged and that the Program was advertised (again, because Mr. Napuri failed to
27 respond to J&J's Requests for Admission), there were fewer patrons at Incas Grill (8-10) than there
28 were in these other cases. Accordingly, the undersigned recommends that the district court award

J&J $2,500 in enhanced damages. *Cf. J&J Sports Prods., Inc. v. Mosley*, No. 10-5126 CW (EMC), 2011 WL 2066713, at *5 (N.D. Cal. Apr. 13, 2011) (Chen, J.) (awarding $2,500 based plaintiff's actual losses and $2,500 in enhanced damages under § 553 when 17 patrons were present and no cover charge was incurred); *J&J Sports Prods., Inc. v. Magat*, No. C 11-01149 WHA, 2011 WL 4831206, at *3 (N.D. Cal. Oct. 12, 2011) (Alsup, J.) (despite plaintiffs' "offer[ing] a panoply of examples from other districts of how large awards of enhanced damages have been calculated," declining to award enhanced damages where approximately 20 individuals viewed a single 19-inch television and where there was no evidence of a cover charge, increased food prices during the programming, special advertising, or that defendants were repeat offenders).

## II. DAMAGES FOR CONVERSION

J&J also seeks damages for conversation. Damages for conversion are based on the value of the property at the time of conversion. *See Tyrone Pac. Intern., Inc. v. MV Eurychili*, 658 F.2d 664, 666 (9th Cir. 1981); *Arizona Power Corp. v. Smith*, 119 F.3d 888, 890 (9th Cir. 1941). J&J has submitted evidence demonstrating that the licensing fee for a venue the size of Incas Grill would have been $2,200. Gagliardi Decl. ¶ 8, ECF No. 25. Accordingly, the undersigned recommends that the district court award J&J $2,200 in damages for its conversion claim.

## III. ATTORNEY'S FEES AND COSTS

Costs and reasonable attorneys' fees are recoverable under § 605(e)(3)(B)(iii). Rather than submitting evidence in support of them, J&J simply requests that it be given 14 days from the entry of judgment to submit a motion for attorney's fees and costs (which, presumably, will include the necessary evidence). Motion, ECF No. 38 at 16. Based on this request, the undersigned recommends that the district court allow J&J to file a motion for attorney's fees and costs within 14 days from the entry of judgment.

## IV. CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that the district court **GRANT** J&J's motion for damages and award J&J a total of $6,900 in damages ($2,200 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II), enhanced damages of $2,500 under 47 U.S.C. § 605(e)(3)(C)(ii), and $2,200 in conversion damages). The undersigned **FURTHER RECOMMENDS** that the district

court allow J&J to file a motion for attorney's fees and costs within 14 days from the entry of judgment.

J&J shall serve a copy of the report and recommendation on Mr. Napuri within three days from the filing date of this order and shall file a proof of service thereafter.

Any party may file objections to this report and recommendation with the district judge within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civ. L.R. 72-3. Failure to file an objection may waive the right to review of the issue in the district court.

**IT IS SO ORDERED.**

Dated: March 7, 2013

_____
LAUREL BEELER
United States Magistrate Judge